# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between Tim Phillips, individually and on behalf of all Opt-In Plaintiffs (collectively, "Plaintiffs") and EQT RE, LLC (including its affiliates, subsidiaries and parents) formerly known as Rice Energy, Inc. (collectively, "Defendant") (and together with Plaintiffs, "the Parties"), by and through their counsel of record in the lawsuit entitled *Tim Phillips v. Rice Energy, Inc.*, Civil Action No. 17-cv-945, in the United States District Court for the Western District of Pennsylvania ("the Lawsuit").

The Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, hereby agree as follows:

## AGREEMENT

1. **Total Maximum Settlement Payment.**

    (a) The Total Maximum Settlement Payment that Defendant will have to pay in connection with this settlement is $360,000.00 which will be inclusive of all payments to Plaintiffs, attorneys' fees, litigation costs, a service/general release payment to Named Plaintiff Tim Phillips, and the cost of administering the settlement except as provided for in Section 1(b).

    (b) The Total Maximum Settlement Payment excludes Defendant's share of payroll taxes as well as the first $5,000.00 in settlement administration costs which Defendant shall bear separate and apart from the Total Maximum Settlement Payment. Settlement administration costs in excess of $5,000.00, if any, shall be deducted from the Total Maximum Settlement Payment before calculating the Net Settlement Amount.

    (c) The parties agree that, except for the consideration specified in this Section, no other monies or benefits will be due, become due or be paid by Defendant in connection with the settlement of the Lawsuit.

2. **Scope of the Settlement Class.** The settlement class presently consists of Named Plaintiff Tim Phillips and all Opt-In Plaintiffs – specifically, Gerald M. Wilson, Jared Wolfgramm, Jason Schmidlkofer, Robby Pace, Ryane Hormann and Terry Ford.

3. **Allocation of the Settlement Amount.**

    (a) The Net Settlement Amount is the Total Maximum Settlement Payment less any Court-awarded attorneys' fees and litigation costs, the enhancement payment/general release payment to Named Plaintiff Tim Phillips, and the cost of administration (including mailing Notice of the settlement by Plaintiffs' Counsel) in excess of $5,000.00. Among other things, it is anticipated that the following amounts shall be deducted from the Total Maximum Settlement Payment: (i) $131,400.00 for Plaintiffs' Counsel's attorneys' fees; (ii) $1,600.00 for Plaintiffs' Counsel's litigation

1

      costs incurred; and (iii) a $10,000.00 (Ten Thousand Dollar) service/general release payment allocated to Tim Phillips.

    (b) Plaintiffs' Counsel will compute an allocation of settlement amounts for Plaintiffs from the Net Settlement Amount. The preliminary allocation is attached hereto as Exhibit A. Defendant does not oppose these allocations.

4. **Release**

    (a) This settlement covers the period from August 31, 2014 through the date the Court grants final approval of this settlement for Pennsylvania and Ohio state law claims, and three (3) years prior to the date each settlement class member filed their opt-in consent form to participate in this action for the federal wage and hour claims, through the date the Court grants final approval to this settlement.

    (b) Plaintiffs will release all claims asserted in the Complaint along with all state and federal wage and hour claims that were asserted or could have been asserted against Defendant and the Releasees, through the date of final court approval, for services performed for Defendant. The claims of the Plaintiffs will be dismissed with prejudice.

    (c) Releasees means EQT RE, LLC (formerly Rice Energy, Inc.), EQT Corporation, EQT Production Company, Geological Engineering Services, Inc. (GESI); Sierra Hamilton, LLC, Sierra Engineering, Ally Consulting, LLC, Didier Engineering Consulting and all of the preceding entities' past, present and future parent companies, subsidiaries, corporate affiliates, divisions, agents, employees, owners, members, officers, directors, investors, legal representatives, executors, administrators, general partners, limited partners, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers.

5. **Disbursement of the Settlement Amount, Taxation of Settlement Payments and Indemnification**.

    (a) Plaintiffs shall be allocated a settlement award from the Net Settlement Amount; however, and to be clear, only participating class members shall be entitled to a share of the Net Settlement Amount, as discussed more fully herein.

    (b) The Parties shall appoint a settlement administrator and the same shall be responsible for establishing a Qualified Settlement Fund ("QSF") and otherwise administering this settlement.

    (c) One hundred percent (100%) of each settlement class members' settlement award shall be treated as back wages, be reported on an IRS Form W-2, and shall be subject to all withholding taxes. Accordingly, on each settlement class members' settlement award, the Settlement Administrator shall effectuate federal and applicable state income and employment tax withholdings as required by law, and Defendant shall

ensure payment of an employer's share of all required FICA and FUTA taxes on such amounts. Withholding shall be at the 22% supplemental wage tax rate. Tax payments shall be deposited into the Qualified Settlement Fund after the Settlement Awards are mailed, in addition to the Gross Settlement Amount. Amounts withheld will be remitted by the Settlement Administrator from the Qualified Settlement Fund to the appropriate governmental authorities.

(d) Plaintiffs agree that they shall be solely responsible for any and all taxes, interest, and penalties that may be imposed with respect to the Settlement Amount that are owed by them. Plaintiffs further agree to indemnify and hold the Releasees harmless from any and all loss, costs, expenses, interest, payments or penalties, if any, as well as for reasonable attorneys' fees incurred by the Releasees for not paying any taxes owed by Plaintiffs to any tax authority in connection with the Settlement Amount. Plaintiffs are not responsible for any federal, state or local tax liability of the Releasees with respect to the Settlement Amount, and the Releasees will indemnify and hold Plaintiffs harmless from, and will reimburse Plaintiffs for, any and all liability of whatever kind incurred by Plaintiffs as a result of any tax obligations of the Releasees, including, but not limited to, taxes, levies, assessments, fines, interest, attorneys' fees and costs. Plaintiffs acknowledge and agree that the Releasees have not made any representations to Plaintiffs regarding the tax consequences, if any, of any amounts received by Plaintiffs pursuant to this Agreement.

(e) Plaintiffs may elect to become participating class members by timely completing and submitting a claim form, attached hereto as Exhibit B, within sixty (60) calendar days from the date of this Agreement. If a valid and properly executed claim form is not received by the settlement administrator on or before the deadline, then that corresponding individual will have no right receive any payment under this Agreement, provided that Defendant reserves the right in its sole discretion to accept and resolve late or disputed claims. Plaintiffs, regardless of whether they become participating class members, shall nevertheless be subject to the release of released claims, as described above, when they do not submit a claim form in a timely and proper manner.

(f) All settlement award checks shall remain valid and negotiable for One Hundred Eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any settlement award will be deemed void and of no further force and effect.

(g) All funds allocated to Plaintiffs who fail to become participating class members, as well as funds associated with uncashed checks, shall revert to Defendant.

(h) Subject to Plaintiffs providing the settlement administrator with a fully executed claim form, the settlement administrator will deliver all settlement checks for participating class members to Anderson Alexander, PLLC. Anderson Alexander, PLLC shall also provide the Settlement Administrator with a fully executed W-9 as a condition precedent of payment.

(i) Notwithstanding the treatment of the settlement awards above, none of the payments, including the back wages portion, will be treated as earnings or wages under any benefit or retirement plans.

(j) Named Plaintiff Tim Phillips will be issued an IRS Form 1099 with respect to his service/general release payment.

(k) All amounts allocated as attorneys' fees and costs will be paid to Anderson Alexander, PLLC by wire and will be reported on an IRS Form 1099.

6. **Attorneys' Fees and Costs, and Service Payments.**

   (a) Through the settlement approval papers described herein, Plaintiffs' Counsel will apply to the Court for $131,400.00 in attorneys' fees, which represents Thirty-Five Percent (36.5%) of the Total Maximum Settlement Payment. Plaintiffs' Counsel will also seek reimbursement of reasonable litigation expenses in the amount of $1,600.00.

   (b) Plaintiffs' Counsel will seek approval of a service/general release payment of $10,000.00 to Named Plaintiff Tim Phillips. In exchange for this payment, Named Plaintiff Tim Phillips will execute a general release in favor of Defendant and the Releasees for services performed for Defendant.

   (c) Defendant will not oppose approval of the sums described in this Agreement.

7. **Timing of Events; Settlement Approval and Dismissal.**

   (a) On or before December 15, 2018, the Parties will file a joint motion for settlement approval. Plaintiffs' Counsel will draft the motion, consistent with the terms of this Agreement, in time to provide Defendant with seven (7) days to review and discuss changes. The joint motion will seek to have the Settlement approved and the case dismissed with prejudice. The Parties expressly intend for this settlement to result in the Court dismissing all of the Plaintiffs' claims in the Lawsuit with prejudice, and that the Lawsuit must be closed in its entirety.

   (b) Within fourteen (14) business days after the Court approves the Settlement, Defendant will fund the QSF.

8. **Non-Admission of Liability.** By entering into this Agreement, neither Defendant nor any of the Releasees admits to liability in this Lawsuit.

9. **No Publicity.** Counsel for Plaintiffs will keep the terms of this Agreement confidential with the exception of the necessary communications with the Court and Counsel's clients that are Plaintiffs in this matter. Plaintiffs' Counsel will not publicize the settlement or otherwise use or disclose the information obtained in connection with this Lawsuit

(including Defendant's wage and hour practices) for any purpose unrelated to this Lawsuit and settlement. In other words, Plaintiffs' Counsel will not publicize the settlement through emails, website, press releases, or press conferences, except as permitted above.

10. **Nullification of Settlement Agreement.** Tim Phillips represents and warrants that (i) his counsel has presented each of the Plaintiffs with a copy of this Agreement; (ii) Plaintiffs have accepted its terms and do not reject this Agreement; and (iii) have authorized Tim Phillips to execute this Agreement on their behalf. In the event the Court does not finally approve the Settlement Agreement, or the Settlement Agreement does not become final for any other reason, the Settlement Agreement will be null and void unless counsel for the Parties mutually agree in writing to proceed with the Settlement Agreement.

11. **Sole and Entire Agreements.** This Settlement Agreement constitutes the entire agreement of the Parties concerning the subjects contained herein, and all prior and contemporaneous negotiations and understandings between the parties will be deemed merged into this Settlement Agreement.

12. **Counterparts.** This Settlement Agreement will become effective upon its execution, subject to subsequent Court approval. The Parties may execute this Settlement Agreement in counterparts, and execution in counterparts will have the same force and effect as if the parties had signed the same instrument. Any signature made and transmitted by fax or email for the purpose of executing this Settlement Agreement will be deemed an original signature for purposes of this Settlement Agreement and will be binding upon the signing party.

13. **Dismissal with Prejudice**. Within three (3) business days of final approval of this Agreement by the court, Plaintiff, through his counsel, shall cause the dismissal of the Lawsuit by filing a Stipulation of Dismissal with prejudice. The dismissal of the Lawsuit with prejudice shall not bar either party from bringing a claim to enforce this Agreement and the Parties expressly consent to the continuing jurisdiction of the court to enforce the items of this Agreement.

14. **Successors**. Subject to the provisions otherwise contained in this Agreement, this Agreement shall inure to the benefit of and be binding upon the heirs, successors and assigns of the respective Parties to this Agreement.

15. **No Assignments**. Each Party represents that the Party has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, the Party's rights in the Lawsuit or any interest therein, or any other interest in any claims or claims arising out of any of the matters which are the subject of this Agreement.

16. **No Presumption Against Drafter**. This Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Agreement, no provision shall be construed and interpreted for or against either Party because such

provision, any other provision, or the Agreement as a whole is purportedly prepared or requested by such Party.

17. **Duty to Defend**. Plaintiffs and their Counsel agree to abide by all of the terms of this Agreement in good faith, to fully support the Agreement and to defend the Agreement from any legal challenge, whether by appeal or collateral attack. Each Party agrees to execute such further and additional documents, instruments, and writings as may be necessary, proper, required, desirable, or convenient for the purpose of fully effectuating the terms and provisions of this Agreement.

18. **Warranty of Authority**. Each of the signatories hereto warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom he or she purports to sign it.

19. **Entire Agreement**. This Agreement sets forth the entire understanding of the parties regarding the terms and conditions hereof and supersedes and replaces any prior agreements or understanding between the parties in relation thereto. This Agreement can be modified only in a written amendment signed by the parties hereto.

**FOR THE PLAINTIFFS:**

_Tim phillips (Dec 12, 2018)_                     Dated: Dec 12, 2018

Tim Phillips

**FOR THE DEFENDANT:**

_[signature]_                                      Dated: 12/11/18

Name: